**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OLEG PIDTERGERYA, | Civil Action No. 16-0704 (PGS) |
| Petitioner, | |
| v. | OPINION |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**SHERIDAN, District Judge**

This matter comes before the Court on a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Motion") by Petitioner Oleg Pidtergerya, challenging a sentence imposed by this Court in *United States v. Pidtergerya*, No. 14-0166, ECF No. 88 (D.N.J. entered Apr. 17, 2015) ("Crim. Dkt."), for conspiracy to commit wire fraud and identity theft after a guilty plea. Respondent has filed an answer, ECF No. 13, and Petitioner filed a reply, ECF No. 14. For the reasons stated below, the Court denies the Motion.

I.     BACKGROUND

For the purposes of this Opinion, unless otherwise cited, the Court relies on the facts of the criminal matter as recounted by Respondent in its answer, which Petitioner does not dispute. Petitioner was convicted as part of an operation by the Department of Justice to prosecute a host of criminals involved in an elaborate international computer hacking scheme that originated out of Ukraine. Hackers from Ukraine would target American companies and financial institutions, gaining unauthorized access to customer accounts, and then divert money from those accounts to other bank accounts and prepaid debit cards that were opened in the names of identity theft victims.

"Cashers" or "cashiers" based around the country would then make withdraws from these fraudulent accounts, and transfer the money via Western Union, MoneyGram, and like services back to Ukraine, after deducting "fees" for their "services." In some instances, cashers would also file false tax returns in the names of these identity theft victims and receive tax refunds from the IRS.

Petitioner managed a casher crew based in the New York area. During his time in the conspiracy, Petitioner's crew defrauded over $1.7 million from at least eleven companies. Petitioner was arrested as part of the DOJ operation, and pled guilty to one count of conspiracy to commit wire fraud and one count of conspiracy to commit access device fraud and identity theft. In the plea agreement, Petitioner stipulated that the loss amount he was responsible for was between $1 million and $2.5 million, and that the number of victims was between 10 and 50. Crim. Dkt., ECF No. 81 at 9. Based on the relevant guidelines calculations, the parties agreed that the applicable offense level was 26. *Id.* at 11. There was no stipulation or agreement as to Petitioner's criminal history category. *Id.* ("The parties reserve any right they may have . . . to appeal the sentencing court's determination of the criminal history category.").

In the presentence report ("PSR"), Probation found that the agreed-to offense level was appropriate, after determining that Petitioner was responsible for a loss amount of $1,758,127.01, the total amount defrauded by the New York crew, across 11 victim companies. PSR at 15. These facts were consistent with the stipulations Petitioner made as part of the plea agreement and, as such, Probation found that the applicable offense level was 26, the same as the agreed-to level. PSR at 26. With regard to Petitioner's criminal history, Probation assigned eight criminal history points to Petitioner, which resulted in a criminal history category of IV. PSR at 33. Based on

these findings, Probation calculated that the guidelines sentencing range for Petitioner was 92 to 115 months. PSR at 43.

At sentencing, Petitioner's counsel agreed that the PSR substantially complied with the terms of the plea agreement, and therefore conceded that Petitioner was obligated to accept its sentencing recommendations. ECF No. 13-3 at 5. However, highlighting the lower sentences received by other defendants in the conspiracy, counsel argued that Petitioner should receive the lowest recommended sentence of 92 months. *Id.* at 5-6. Although the Court disagreed with the assertion that Petitioner's sentence was excessive when compared to the other defendants, the Court nevertheless imposed upon him the lowest guidelines sentence, as counsel had argued. *Id.* at 22.

## II. STANDARD OF REVIEW

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (citation omitted).

In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing

3

record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (citation omitted). "It is the policy of the courts to give a liberal construction to pro se habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United State*, No. 11-4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545-46).

## III. DISCUSSION

The Motion raises three grounds for relief, all of them concerning ineffective assistance of trial counsel. Petitioner alleges that counsel was ineffective for: (1) inducing him "into a plea agreement with stipulations regarding Criminal History that were not supported by court records." ECF No. 6 at 4; (2) failing to argue at sentencing that the Court should correct sentencing disparities between himself and other defendants in the conspiracy; and (3) failing to challenge the loss amount at sentencing and for stipulating to the loss amount in the plea agreement. The Court finds these claims without merit.

### A. Ineffective Assistance of Counsel Standard

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *Id.* at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions

4

of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 134 S. Ct. 1081, 1083 (2014) (citation omitted). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693.[1] To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the [case] would have been different absent the deficient act or omission." *Hinton*, 134 S. Ct. at 1083.

The same two-part *Strickland* standard, described above, is applicable to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In the plea context, "counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer." *United States v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014) (citation omitted). The defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Jesus-Nunez*, 576 F. App'x 103, 106 (3d Cir. 2014) (quoting *Hill*, 474 U.S. at 59).

### B. Criminal History Stipulation

As stated above, Petitioner alleges in the pleading that counsel erred by inducing him into pleading guilty through erroneous stipulation of Petitioner's criminal history in the plea agreement. This is inaccurate, as the plea agreement contained no such stipulations. In Petitioner's brief, instead, he asserts that counsel was ineffective for not objecting to the criminal history calculations

---

[1] The reasonable probability standard is less demanding than the preponderance of the evidence standard. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986); *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).

5

in the PSR, which is another matter altogether that does not challenge the knowing and voluntary nature of the plea agreement. As such, the Court construes this claim as a claim regarding sentencing, not a claim regarding the plea agreement.[2]

Petitioner's claim is without merit. Petitioner takes issue with Probation's criminal history calculation based on his allegation that some of the convictions cited in the PSR were not corroborated. According to the PSR, the conviction records were assembled using various sources of information, e.g. previous indictments, presentence reports of other cases, and supervised release records showing violations due to certain convictions. PSR at 28-33. The PSR does state, for one of the convictions, that "[t]he details of this offense have been requested but not received to date. This arrest resulted in a violation of his Supervised Release term noted above." *Id.* at 33. However, this does not mean the convictions were not corroborated. The burden of proof at sentencing is decidedly less onerous than at trial—the facts relied on only have to satisfy the preponderance of evidence standard, not the beyond a reasonable doubt standard. *See United States v. Jackson*, 862 F.3d 365, 389 (3d Cir. 2017) ("[F]acts that only enhance sentences within the range allowed by the jury's verdict (or guilty plea) need not be charged in an indictment or proven beyond a reasonable doubt." (citation omitted)).

Although Petitioner questions the reliability of the information Probation used to determine his prior criminal history, he submits no evidence to show that the information relied on was incorrect, nor does he deny that those convictions took place—indeed, nowhere in the Motion or

---

[2] To the extent Petitioner argues that he pled guilty due to an erroneous sentencing prediction by counsel, such claim belies the record because Petitioner represented at the plea hearing that he did not agree to the plea due to any sentencing predictions, and he further understood that he cannot withdraw his plea based on any erroneous sentencing predictions. *See* ECF No. 13-9 at 29-30; *United States v. Fazio*, 795 F.3d 421, 428 (3d Cir. 2015) ("[A]ny possible error in plea counsel's advice to [the defendant] was cured by the plea agreement and at the plea colloquy.").

6

his brief does Petitioner contend that he did not commit those crimes. On a federal habeas, it is *Petitioner's* burden to show that he is entitled to relief. He has not shown here that counsel was ineffective for failing to object to the criminal history calculation, because he has not shown that the calculation was incorrect; counsel was not required to object for the sake of objecting. Nor has Petitioner shown that had counsel objected, the outcome at sentencing would have been different—further investigation was more likely than not to confirm that Petitioner was convicted of those crimes. It was reasonable for this Court to rely on the PSR when Petitioner provided no evidence to contradict its findings, something he *still* has not done here on federal habeas. Essentially, Petitioner asks this Court to grant habeas relief based on a technicality, which does not comport with the standard of review for an ineffective assistance of counsel claim. Thus, relief on this ground is denied.

### C. Disparity With Other Sentences

Petitioner asserts that counsel was ineffective because he failed to argue at sentencing that Petitioner's sentence was excessive in light of the sentences received by other defendants in the conspiracy. The Court disagrees.

To begin, as summarized above, counsel *did* raise that argument, albeit under the constraints of the plea agreement, which he correctly recognized that he cannot violate lest risk invalidating the agreement for failure to abide by its terms. Instead, he argued that Petitioner should receive the lowest possible guidelines sentence due to the alleged sentencing disparities, which was exactly what the Court imposed. As such, there is simply nothing in the record to support Petitioner's claim that counsel failed to make such an argument. To the extent Petitioner is unhappy with the result, that is not a valid ground to assert an ineffective assistance of counsel claim. *See Kim v. United States*, No. 05-3407, 2006 WL 981173, at *3 (D.N.J. Apr. 4, 2006)

("[T]hat [he] now appears unhappy with the result does nothing to change the fact that there is not the slightest indication that petitioner received ineffective assistance of counsel.").

Moreover, as the Court found at sentencing, there was no disparity. Petitioner's sentence was greater than that of other defendants because his crimes resulted in the greatest loss amount, and his criminal history was more extensive. Both the loss amount and the offense level imposed by the Court were consistent with what Petitioner stipulated to in the plea agreement. To establish that a defendant should be granted a downward variance at sentencing due to sentencing disparities, the defendant must show that he is similarly situated to other defendants who received a lesser sentence. *See United States v. Robinson*, 603 F.3d 230, 234 (3d Cir. 2010). When a defendant himself pleads guilty to a greater crime, he cannot argue that he is similarly situated to other defendants. *See Levy v. United States*, No. 16-5336, 2017 WL 1383762, at *5 (S.D.N.Y. Apr. 13, 2017) (finding that defendants whose criminal conduct resulted in different loss amounts are not similarly situated for the purposes of sentencing). Defendants also are not similarly situated when their criminal histories differ significantly, even when they have been found guilty of the exact same criminal conduct. *See United States v. Parker*, 462 F.3d 273, 278 (3d Cir. 2006) (holding that codefendants were not similarly situated because one had a less extensive criminal history); *United States v. Plouffe*, 445 F.3d 1126, 1132 (9th Cir. 2006) ("Because Plouffe's criminal history was different from that of his co-defendant, the district court had a reasonable basis under the advisory Sentencing Guidelines for the difference in the sentence each received[.]"). Therefore, Petitioner has failed to establish either prong of the *Strickland* test on this ineffective assistance of counsel claim, and relief is denied.

### D. Loss Amount

Finally, Petitioner argues that counsel was ineffective for failing to challenge the loss amount found in the PSR, and for stipulating to the loss amount in the plea agreement. The Court rejects this argument. First, counsel did not stipulate to the loss amount; Petitioner did. It was Petitioner's signature affixed to the plea agreement where he stated that he agreed and accepted its terms. *See* Crim. Dkt., ECF No. 81 at 8. If he did not agree to the stipulations, he could have simply rejected the agreement and refused to sign. Petitioner further confirmed at the plea hearing that no one coerced or forced him to sign the plea agreement. ECF No. 13-9 at 11-12. To now claim that his attorney stipulated to the loss amount is a clear abdication of his responsibilities which, ironically, he received a sentence reduction for, the acceptance of responsibility. *See* Crim. Dkt., ECF No. 81 at 10-11; PSR at 26.

With regard to his argument that counsel failed to challenge the loss amount found by Probation, the Court cannot discern how any such challenge would have made a difference on his sentence. The plea agreement specifically stipulated that the loss amount was between $1 million and $2.5 million, and that stipulated loss range resulted in an offense level of 26. Probation found the loss amount to be $1,758,127.01—right smack in the middle of the stipulated loss range—which is why it agreed that the stipulated offense level was appropriate. Even if the loss amount in the PSR was technically incorrect, Petitioner fails to show how that would have changed his sentence—the loss amount could have been off by $500,000, and the sentence would still have been the same. *See* PSR at 20. Again, Petitioner simply fails to take responsibility for his admission of factual guilt, i.e. that his crimes resulted in a loss amount of more than $1 million. Counsel need not object to that amount because Petitioner already admitted to that loss amount. *See Menna v. New York*, 423 U.S. 61, 62 n.2 (1975) ("A counseled plea of guilty is an admission

of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case."). Accordingly, Petitioner has not established that counsel was ineffective, and relief on this ground is denied.

## IV. CERTIFICATE OF APPEALABILITY

Lastly, the Court denies a certificate of appealability ("COA"). Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A Petitioner satisfies this standard by demonstrating that jurist of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus no certificate of appealability shall issue. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## V. CONCLUSION

For the reasons set forth above, Petitioner's Motion is DENIED and the Court denies a certificate of appealability.

_____
Peter G. Sheridan
Date:                                      United States District Judge